v. Walter Mabry. Case number 19-3050. United States of America v. Walter Mabry appellant. Mr. Axum for the appellant. Mr. Coleman for the appellate. May it please the court. Tony Axum. Good morning. I'm Tony Axum representing Walter Mabry and I'd like to reserve two minutes for rebuttal. When someone wants to end a consensual encounter, one way to do so is by walking away. One of Mr. Mabry's companions tried to slowly walk away here and officers promptly stopped him and patted him down. The stop of Mr. Mabry's companion contributed to the totality of the circumstances that conveyed to Mr. Mabry that he was not free to leave. In fact, for some time Mr. Mabry did not try to leave but remained against the fence in submission to the officer's authority. The other circumstances that contributed to the totality of circumstances establishing Mr. Mabry's seizure included the time of night. It was late into the evening. It was dark. Mr. Mabry was on a limited span of sidewalk. Multiple officers approached in unison. There were three officers. They had pulled up abruptly. During the course of the encounter, another marked police car arrived. The car that the officers arrived in and parked. They parked directly in front of Mr. Mabry and his companions so that Mr. Mabry had a wrought iron fence behind him and the police car and officers in front of him. As the officers exited the car, they began to corral Mr. Mabry and his companions, stopping one from walking away as I said. They got out with purpose and they approached each person directly as though someone had committed a crime. I submit that a reasonable person in Mr. Mabry's position would have felt targeted and would not feel free to leave. That is especially so given that Mr. Mabry had witnessed the first person be physically obstructed and stopped and become irate as officers patted that first person down. With regard to the second person who was right next to Mr. Mabry, he is standing as the officer approaches with his hands in the air, a sign of submission, a sign again that he does not feel free to leave. I understand that is not Mr. Mabry, but it adds to the atmosphere and totality of circumstances that would make a reasonable person in Mr. Mabry's position not feel free to leave. Finally, there is Mr. Mabry himself. The officer is standing in the close personal space of Mr. Mabry and he is shining a light on him and essentially commanding him to show him his waist. Mr. Mabry does that. Mr. Mabry shows his waist not one time, but a second time and then ultimately a third time. Each of these points is a point of seizure and I submit that Mr. Mabry was seized from the very first, but certainly throughout this encounter, Mr. Mabry was seized. At what point are you saying there was a show of authority? I would say there was a show of authority from the very moment that the officers exited the car. They did not walk up in a casual way and say, hey, guys, how are you doing? That would be a rather broad interpretation if we were to say that, wouldn't it be? I mean, when officers get out of the car without their weapons out, I mean, it's not as if they're charging after somebody. Surely that can't be the show of authority. No, no, I'm not saying that there is any one single thing that is the show of authority. I know that it makes it more convenient to understand like the point of seizure. So if I had to identify the strongest show of authority was initially physically stopping someone who is slowly walking away. That was not Mabry, right? No, but it conveyed to everyone else there that if you choose not to engage with us, you will be stopped and you will be searched. It was circumstantial evidence to anyone who was present. And I direct the court to United States v. Drayton where the circumstances are slightly different. They're on a bus, but the court was very clear in deciding that no seizure had occurred. The court, one factor was that no one else had been stopped. One factor was that the exit was not blocked for anyone else to leave. Here, we essentially have on this limited span of sidewalk, the exit being blocked by the police and that conveyed to everyone present. We are here to search you and you will comply even if you attempt to walk away, even if you exhibit like a clear sign that you do not want to engage with us. So that was the first most dramatic point of seizure of all three. While that is going on, there are two other officers engaged with Mr. Mabry and the person right next to Mr. Mabry. So this is a show of force. It's not. At one point, as soon as I think at the outset, well, anyway, during this brief interval with Mabry is actually in conversation with the police, he at one point he says, he says, I'm going to leave. That's correct. Certainly suggested anything prior to that did not leave him thinking he could not leave. Well, the first thing that I would say that is the test is whether a reasonable person would feel free to leave. And so, Mr. Mabry subjective belief in whether he could leave or not is not the most relevant, it does inform whether a reasonable person would feel that they can leave. And, but the second thing that I would say that is when Mr. Mabry says that the officer has has at by that point, the officer has made several demands of Mr. Mabry demands commands and Mr. Mabry has indicated that he does not wish to continue to comply with the officer. Specifically, at that point that Mr. Mabry says I'm going to leave, he starts to take a step to the left or two steps to the left, and the officer again with the flashlight shines the flashlight at him and take steps with him, suggesting, again, that you are not going to leave. And Mr. Mabry already has the circumstantial evidence of the stop of the first person, and I would submit, even the, the, the stop of the second person who when police arrive is standing as the officer approaches immediately puts his hands up in a form of submission. That would convey to a reasonable person that we are all seized. Did you just say I just want to be clear about this, that after saying, I'm going to leave the officer moved in such a way as to make that more difficult. I would say he did two things. He, he, he shined his flashlight on Mr. Mabry, a third time and what I need to say about the flashlight. The flashlight is nonverbal, a nonverbal tool of a nonverbal form of communication. Just as holding your hand up without saying anything would indicate hope the flashlight, the officers using is, is flashed in a way to get compliance or to control the situation. And at this point when Mr. Mabry starts to leave the officer does again shine the flashlight at Mr. Mabry's waist again. And Mr. Mabry in fact lifts his waist again while saying I'm going to leave. So he is still submitting he's still in compliance. But it's also telling that Mr. Mabry doesn't leave because he doesn't feel that he can. To answer your question very directly. Yes, the officer takes steps, you can see his shadow move with Mr. Mabry as Mr. Mabry says I'm going to leave and starts to move to the left. The officer moves with him while using the flashlight to control Mr. Mabry, so I would submit Mr. Mabry yes was seized. Definitely at that point. At that point, he actually does leave right right after the third showing of his waist. Yes. Yes. What, what, what do you do with the district courts finding That District Court found that the officers observed the defendant Observed the defendant trying to remove trying to To move the right side of his body in a way to manipulate the satchel away from the officer. Doesn't that suggest that he was not submitting at that point. Your Honor, I, I strongly disagree with that. With what with the district court with what I just said. Well, I disagree. I'll take both I disagree with the characterization and I disagree that that he was he was trying to That he was not in compliance, even if you accept that characterization. Mr. Mabry and taking the second first Mr. Mabry was not asked, turn your body this way or that way. He was. These were nonverbal commands with the flashlight. And Mr. Mabry lifted his shirt. There's no command you're turning the wrong way. If you look at the video.  And this is to the first question whether whether there's actually blading or trying to hide or manipulate something. I think those are very strong words for what you see in that video because As Mr. Mabry lifts his waist. You can see the satchel. He is not turning that satchel like away if if there is a turn it is ever so slight. He does not touch it. He doesn't move it. He does not manipulate it at all. So I think that is just a mischaracterization of the record. Well, even if even if it's not Do you think, could you make an argument that he really doesn't make any pardon me. It doesn't make any difference because under your theory, he had submitted before that. Yes, absolutely. It he Mr. Maybe had already submitted by by lifting his clothes in the first instance, but the other thing that I think I need to say about that is that the district court. Said that it didn't have to make a reasonable suspicion determination didn't have to reach that question at all because it found that the entire encounter was consensual. So although there's an implication and what the district court says that That It could go to reasonable suspicion. The district court has not made that finding in the first instance. Okay. Unless either of my colleagues has a question. We'll hear from government. Oh, I do. Sorry. Go ahead. A couple questions. Yeah. Hold on. Could you hold on just one second. I just want to find my place. So first, first, I want to get straight in my mind, sort of a hypothetical if the police come up to me and and They say, you know, show me under your shirt and I say, or they just come up to me and and they start asking me questions and I say, I don't have to answer your questions. I'm a lawyer. I know I don't have to answer your questions. I'm going to leave. Is that submission. Even if they're surrounding me That's not that's not enough for submission right There's two different limit. There's clearly two different requirements. So there has to be a show of authority and submission. Correct. Yes. Okay. So is that submission. If the person says, well, I'm just not going to answer your questions and I'm going to leave. Well, I think it's very difficult to submit when officers are simply asking questions. So you need that condition preceding you need The show of authority and asking questions. I think this court has held simply asking questions is not a show of authority. Okay. What about a command. What about a command. To which to which your answer is, I'm not going to, I'm not going to do what you say I'm a lawyer. I know you don't have any any probable cause or reasonable suspicion. I'm leaving. Is that a submission. I would say yes. Even if you say no, I'm going to leave. Well, well, I think it depends on what the question is, if the question is, please stand here. Will you please stand here and you say no, and you leave. You have not submitted. Yeah, but I mean, I almost have to say that there that in the time it takes you to answer you have momentarily submitted If that's if that's the case, and there's no separation between the show of authority and the submission requirement. In some circumstances, the separation. I think would be very quick. Yes. All right. So just to explain why I'm asking this questions. I guess it's probably seems obvious. So On the question. I don't have any doubt about a show of authority in this case. The question is when but there's clearly a show of authority. I'm concerned about when the submission occurs or if there is a submission. So you say he submits by showing his waist. As far as I can tell, there's no command to show the waist. Is that right, at least there's no no no verbal command that we can hear. Is that right, There is no verbal command that we can hear to show show your waist. That is correct. And the burden is on the defendant on the person who is seized to show he was seized. Right. That's correct. Okay, so One reading of what he did with respect to the showing of the waist is he knew he didn't have a gun under the jacket underneath his shirt. So he was showing the waist, not as submission, but as a way to get out. Look, I don't have any gun here. That's what he was doing that and because if he wasn't commanded to do it and he did it. Go ahead. Go ahead. I again I strongly disagree that he was not commanded to do it because the use of the flashlight was a nonverbal command. I understand that. The law has developed so that we are looking for words from the police, but the use of the flashlight is is a nonverbal command, just like me spinning my fingers around is means wrap up or I could turn my hand. Behind him. I mean, you're saying the police can't use a flashlight, even to see whether somebody that they're talking to has a gun without that being a command. No, I'm not saying that. But we know that the officer use the flashlight repeatedly here to control Mr. Mabry because you can see the video that each time he wants to control him. He moves the flashlight around his waist area. And each time that happens, Mr. Mabry does in fact lift his clothes. Mr. Maybe if if the police had walked up without a flashlight. I find it very hard to believe that Mr. Maybe would have just lifted his clothes. Now, I understand. But you said it's it's dark. So it doesn't seem Maybe if it if there were some other circumstance, but in a dark circumstance, the use of the flashlight to see isn't necessarily a command. It's to see. And then the question is whether Mr. Mabry is responding out of submission or responding out of evasion. Let me ask you another question. So he says, I'm going to leave Doesn't that indicate lack of submission at that point? I'm going to leave. Not until he leaves. Why? Why? Why? If, again, if the police come up to me and and start demanding that I say things and I stand there. I said, I'm, I'm an American citizen. I can stand on the sidewalk if I want to. And I'm not going to answer you. It's not submission. I mean, normally what might happen after that is a police would put their hands on me. But then we have it. Then we have a physical seizure and we don't have the question of submission. At that point, submission is no longer an issue. But if they don't put my hands on me, we just stand there talking to each other or even yelling at each other. That that is there a case that says that that submission. I'm not sure that there's a case that says that that a police officer walking up to you and commanding that you do something and you standing there is submission. But there are cases that say if you are there and the police arrive and they command you. And you. Are in the same state that you were in. The court, or I should say, a court should look at what you were doing before the police arrived. If you were standing there before the police arrived and you're still standing there when the police come, even though you have expressed that you do not wish to engage with the police, you are submitting by remaining there. Well, in this case, it's about 10 seconds after the last time he says, Well, I don't even know if there is a first time because I can't hear it exactly. But, and the judge only finds one circumstance in which the defendant says, I'm going to leave and then 10 seconds later, he leaves so He says to the police. I'm not gonna I'm gonna leave and then 10 seconds later, he leaves. How is that submission. Submission can be brief as as Brody says, but we're, we can't ignore what is happening during that time. And during that time, Mr. Mr maybe is is being accosted by the police borderline harassed by the police, and we can't divorce this from what has already happened at that scene. Someone else has been forcibly stopped. Someone else has been patted down while holding their hands up. The officers have descended in force. This is not a casual encounter. This is very targeted and direct and there is an expectation the officers are expressing with all of their behavior they are expressing an expectation of compliance and by remaining there. Mr. Maybe is giving compliance implicit implicit in the commands that the officer officer is making implicit in the command. Let me see your satchel is the directive, you're not free to go until I see your satchel. I agree. I definitely get that. That's why I say I have no problem on the show of authority. I think when he says that at the very latest, that is the moment of a show of authority for sure, because that's not a may I please, that's a let me see. So I agree with you on that. And during that time, Mr. Maybe is pleading with him, not to show the satchel. And that is compliance, because he is not fleeing at that time, he doesn't have to. Again, if this is consensual, Mr. Maybe doesn't have to stay there for one second for half a second. He can immediately walk away, but he is staying because there's been a show of authority and implicit in that is remain here until and Mr. Maybe is resisting that until until he does leave but but that that brief compliance is nonetheless compliance. Okay, thank you. Thank you. Thank you. We'll hear from the government. I can't hear you. Good morning. Please the court. My name is Nick Coleman representing the United States. I'd like to begin, it seems to me that talent is sort of asserting a seizure at either of one of two moments. One is when a parent is initially approached by officer Wilson, and shows his waist. The second two courses when officer Wilson asks to see the satchel. With respect to the first alleged show of authority. We submit that that isn't a judge Friedman certainly did not air in concluding that it was not a show of authority. Officer Wilson approached a pellet, and his can I just check with you, Mr Coleman, that conclusion, is that a fact or a law. Conclusion, because that makes sense. So obviously whether there was a show of authority is a legal conclusion. Okay. Some of, obviously, as I'll get to some of the factual findings that judge Friedman make however it makes however are very significant. With respect to that initial approach. Officer volts and walks up to a pellet and his in the palace immediate companion who we've called the second man alone. The other two officers have approached across the street, the third man. So officer Wilson at that point is certainly not surrounding a pellet. And I disagree with the palace characterization of what a palace position was at that point that he was somehow blocked or impeded the fence that he's against is pretty low fence. He's at a corner. He certainly can go, he's not blocked to his left, and he's not blocked behind him. Obviously, I suppose if he went in front officer Wilson's there and if he went to his right, the other officers are there but he's certainly not being blocked or sort of kept up against a fence. I don't think that's a fair characterization of what was happening at that moment. As for the pat down of the second man. Judge Friedman, we submit did not error, and certainly didn't clearly error concluding that that was in fact a consensual pat down if you listen to the voice point isn't isn't the point that from the defendant's point of view, he saw two of his friends. Stopped and patted down by the police, and a reasonable person would conclude from that that they're not that that's a show of authority that that's that that's what he saw. So, Judge Friedman certainly consider that argument, Your Honor, and I think correctly rejected it because I think you have to take a look at sort of what actually happened particularly with respect to the second man who is the one who's right next to a pellet. That second man isn't just subjected to a pat down without being asked. He's not ordered to be patted down. He's asked. And if you listen to officer Wilson's tone of voice. Since we have that audio on the body worn camera footage I think that tone of voice errors out Judge Friedman's finding on that point. It's a fully, it's a consensual request. And I think as the Supreme Court held in Drayton. It's not reasonable for a person to assume that simply because the people that he's with some of them get patted down in Drayton I think even said somebody was arrested that doesn't necessarily mean that a pellet or everybody there is being seized, or won't be allowed to leave without submitting to a pat down. In fact, if anything, the fact that officer Bolson asks, and certainly in a tone of voice that isn't a command indicates that the second man had the option of saying no. Now I think one of the interesting points that appellant is making is that somehow, because the second man raises his and his hands up as officer Bolson approaches, and then appellant shows his waistband that that was submission. But what about let me see your satchel, which he says at least five times. All right. So I think at that again that that's the second alleged show of authority. And the reason why I think the initial approach is important is because if there has been no show authority up to that point, then at most what we have in certainly Judge Friedman concluded that that was not a show of authority that it was a request. And that was a factual finding that it was a request, but even if this court were to do that. I mean, we, we have the exact same words that Judge Friedman has, you're talking about to let me show, show me your satchel. Let me see your satchel. Let me see your satchel. Yes, Judge Friedman did conclude that that was a request, and not a command. Isn't his word question. I'm sorry, your honor. Didn't he say that was a question right a question but again a question is different from a command. I mean, it could not reasonably be characterized as a question. I understand you that you want to characterize as a request, and maybe so, but it's certainly not a question. So, you know, again, I don't think I think that what Judge Friedman was trying to say was he did not interpret it as a command. Even if this court were to disagree with that assessment. The question is, even if it was a show of authority there still has to be a submission for there to have been a seizure appellant certainly does not submit to that Mr axioms argument is that staying around is the, is the submission. So I don't think I think that is starting to parse things to finally, if the request from the officer is, you know, even if it's a command let me see your satchel and appellant basically says no I'm not going to show it to you. I'm going to leave the officer may repeat it, but there isn't an implicit command there that I see you have to stay put that such that we can say that if appellant stays put for a second or two as he does that he somehow submitted to a separate show of authority the show of authority, if there is one at all, is, let me see your satchel appellant clearly says. And with respect to the judge Friedman's, you know, conclusion that appellant was trying to blade his body or turn it away I don't think that that was that judge Friedman found that sort of some sort of service to reasonable suspicion. What he's saying is it's further proof that appellant is not submitting. He is not showing that satchel. So, even if this court were to have a concern with judge Friedman's conclusion that the repeated requests to see the satchel were a show of authority. There's no submission to that show of authority. But he didn't, he didn't leave at that point. In that sense, he didn't leave at that point. So, again, he didn't leave. In that sense, it's, it's like Delaney, where the defendant just sat in the car and didn't leave, and that was considered submission. So I think Delaney is a very different. I'm sorry. So, I think Delaney was a very different case, Your Honor, for the simple reason that in that instance, the defendant was in a was inside a vehicle. He's parked. And as this court found or ruled, the police officers positioned their vehicle in such a way that it was extremely difficult. If at all possible for the defendant to be able to move his vehicle and go around the officer. So, in other words, to be able to leave in his vehicle. He had to make several turns. And at the same time, the officers used a takedown light and a takedown light, we submit is a much different thing from a flashlight. A takedown light is designed essentially to render the driver of a vehicle or whoever that's the searchlight is being pointed at from being able to see very well. So that, of course, if you if you're in a vehicle, you're parked, the officers put their vehicle in a way that it's almost impossible for you to get around and then they shine a very bright light in your face. Yeah, you're not really going to be able to move. It's going to be very difficult to get out. That isn't what happens here. And I disagree with the parents characterization of the use of the flashlight is being some sort of nonverbal command. The flashlight, again, it's it's designed to be able to see where you can't because it's dark. Certainly, the officer never shines the flashlight in appellant's face in a way that would sort of impede appellant's ability to see what was going on around him and thus to get out of the way. Can you see? So now I can't remember from the video, but can you see from the video? Maybe Mr. Axon can answer this also on rebuttal, whether he sort of waved the flashlight in a direction indicating, you know, lift your lift your your shirt. I don't see that, Your Honor. I don't see that. And again, I'd have to go back and check, but I don't think that Judge Freeman was asked to make a finding that the flashlight was used in such a way or waved around in such a way that it was a nonverbal command. Appellant lifts his shirt and he does it repeatedly. But I think the better interpretation of that is, yes, he wanted to essentially sort of show the officer, hey, look, I don't have anything. And isn't that because isn't that isn't the interpretation of that because he wanted to leave and he was showing him that he had nothing under his shirt. In order to get the officers to let him leave. So, in other words, it demonstrates his, according to the defendant's argument, demonstrates his submission. He had submitted. He was not leaving. He was raising his shirt in order to convince officers to let him leave. So, Your Honor, what I'd submit here is, again, in order for submission to amount to a seizure, there has to be a show of authority. We're assuming there has been a show of authority. I agree with you. I kind of see the case the way Judge Garland does. I think there is a show of authority here. The tricky question is this issue of submission. So just assume for a minute that I think there's a show of authority. Why isn't his constant raising of his shirt evidence of his submission? That is, he raised it because he wanted them to let him go. So I think he wanted to use it to see if he could get the officers to go away. But I don't think that that means that he's trying to leave. There's no indication here that appellant doesn't think he's able to leave. In fact, he tells the officer, I'm going to leave. You have nothing on me. And so, again, I don't think that his constant raising of his shirt, which the officer never asks him to do, never says, lift your shirt, show me your waistband. He doesn't do that. Appellant chooses to do that, just as the second man who's with him. He's never told, put your hands in the air. He just does that. And, you know, that doesn't now render what would otherwise be, you know, officers are entitled and the Supreme Court's been very clear. This court's been very clear. Officers can approach citizens on a sidewalk. They can do that. They can approach them. They can ask them questions. And the fact that the person whom they approach decides to do things like lift his hands or in the air or show his waistband doesn't now turn what would otherwise be a consensual encounter into a non-consensual one. Again, it takes two to tango here. And I don't think that, you know, the unilateral act of the person on the sidewalk renders what would otherwise be a consensual encounter to a non-consensual one. I just have a technical question. What do we do with the fact that, so for the second and third times when he raised his shirt, the audio was on then and we know what the officer said. We don't know what the officer said the first time, right? Because the officer hadn't turned on the audio at that point. I think that's correct. But certainly I haven't, there's no evidence in the record that he commanded anyone to show me your waistband. There's no evidence in the record. My point is we have no idea what the officer said at that point because the audio wasn't turned on. So who's, how do we think about that? So the burden is on appellant to show that he was in fact seized. But how can the defendant, unless the defendant has turned on his phone to record, do the police have an obligation to turn on the audio? How does that work? Could you just explain it to me? What is their obligation? Well, let me ask you this. Is the video on all the time or do they have to turn that on too? My understanding, Your Honor, and again, since I don't, I haven't practiced in the trial sections for a while. My understanding, Your Honor, is that the video is always on. The officers, in order to, but in order for it to be recorded, they have to hit a button, which will then actually record the data and sort of save it. And then the audio only turns on after a certain amount of time. I think that has to do with a there are data storage issues when you have, you know, sort of that many people with cameras. Yeah, I understand that. But should this officer turn on his audio before he encountered the defendant? So I think he did, Your Honor. The problem is that he hits the button as they pull up. But is that the audio doesn't turn on for there's a lag. There is a time lag. Although the video gets saved, the video feed gets saved before the audio feeds begins to get saved. All right. That's my understanding of how it works. So he didn't hit the button between the first encounter and the first shirt encounter and the second one. It just came on at that point. I think you're right. I believe he hit his button before they even got out of the car. That's my understanding. So, but the problem is that even if he hits his button at that point, there's going to be a lag in the audio. Told it's 30 seconds. Right. So because and that, you know, unfortunately, of course, that means that not everything gets gets recorded. But after all, you know, in terms of going back to the question of what could you know, how is the defendant supposed to be able to prove otherwise? Well, it's kind of how like everybody had to prove these things before there was body worn camera footage or in a case where there isn't video. It's done by testimony and the judge hears the testimony and draws conclusions based on as to whether he credits testimony and makes factual findings. Now, in this case, my understanding is that appellant did not seek to introduce any testimony as to whether or not Officer Volson commanded him to show his waistband or not during that brief period of time. But again, that's you know, that that's just the evidence that was presented to Judge Friedman. And he didn't clearly err in finding that the lifting of the waistbands or the raising of the hands by the second man was in was not in response to a command. There certainly isn't clear error here as to that point. So again, if if going back to the point that I made at the beginning, we sort of have two separate questions here. The first is when Officer Volson approaches appellant and during that initial he consensually pats down the second man and he's talking to appellant and appellant is showing his waistband. Was that a show of authority with a such that we have submission and a seizure? Second, when Officer Volson repeatedly asked to see the satchel, was that a show of authority first and was there submission? And I think, you know, certainly what is clear on this record we submit is that there certainly wasn't any submission to any show of authority with respect to the satchel. And without that, without those two findings or without those two sort of pieces of the puzzle, we don't have a seizure. And when appellant runs and then discards the satchel, there are no grounds here for suppression of the evidence. OK. If there are no further questions. Anything else? No. OK. We respectfully submit that the judgment should be affirmed. OK, thank you. Mr. Anson, you are out of time, but you can take one minute. Thank you, Your Honor. Well, with regard to the body worn cameras, I believe that Officer Goss testified. And it's my understanding that officers, according to NPD regulations, are supposed to turn on their body worn cameras before an encounter occurs. And as you can see, that did not occur here. But what happens is that because there was a delay when the audio came on. Well, what happens when they press the button? The last two minutes are recorded. The previous two minutes, because the recorder is always running, the previous two minutes are recorded without sound. So if you look at Officer Olsen's, you'll see at two minutes you start to hear the sound. But you can see video from before the two minutes, from before the sound starts. So it's a two minute video with no sound. And then when they press the button, when they hit it, the sound starts. That is recording with sound. So if the officers chose not to press their recorders when they got out the car, which appears to have happened here, you only get it once. You only get sound once they press record. I think that's correct. J81, Mr. Axsom, that says just that. Yes. Thank you, Your Honor. The burden to show the seizure is on us. But what I'm what we have submitted is that the use of the flashlight is a nonverbal command. Like Mr. Mabry wasn't standing on the street and just flipping his clothes up and down. If the officers had truly walked up in a casual fashion to say, hey, what's going on? How's it going? I find it very hard to believe that Mr. Mabry would have just lifted his clothes. But here you have an added factor. You have the flashlight being directed at his waist and it's not directed at his waist once, twice. It's directed at his waist three times. And every single time in that video that it's directed at his waist, he lifts his clothes. There's only one inference to be drawn from that. And that is at the initial point when he gets out and the officer shines at his waist, he is indicating, show me your waist. The last thing that I want to say about the point at which the officer is actually making commands and Mr. Mabry says, come on, I'm going to leave because I don't have anything on me and I'm going to leave. And the officer commands, satchel, satch. If we believe that up until that point, the entire encounter is consensual, when Mr. Mabry is saying, I don't want to show you my satchel and I'm going to leave. He is withdrawing consent. And when the officer continues to insist, that is seizure. That is seizure as Mr. Mabry remains there saying, I don't want to be involved with this, but I am remaining because implicit in your commands is that I must remain to negotiate my way out of this because I've already seen someone else's stop. Just as the government said he wanted to get the officers to go away. He wanted to get the officers to go away is correct because he did not feel free to leave. Yes. Okay. Thank you, Mr. Max and Mr. Coleman. Thank you. Both the cases submitted.
judges: Tatel, Garland, Ginsburg